**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF MASSACHUSETTS**

                                                                      **CIVIL ACTION**
                                                                      **NO.**

_____
**VICKIE L. HENRY & CLAIRE E. HUMPHREY,**   )
                                                          )
       **Plaintiffs,**                            )
                                                          )
**v.**                                                          )
                                                           )
**THE UNITED STATES OF AMERICA,**         )
                                                           )
       **Defendant.**                          )
_____)

**COMPLAINT**

1.    This is an action seeking a refund of taxes levied on a married couple of the same sex that would not have applied to a married straight couple, and which consequently violates the United States Constitution.

2.    This action presents a constitutional challenges to section 3 of the Defense of Marriage Act, P.L. 104-199, codified in part as 1 U.S.C. § 7 ("DOMA"). DOMA harms plaintiffs and other couples of the same sex in considerable economic and other ways, including preventing married couples of the same-sex from filing joint federal tax returns, which can lesson tax burdens.

3.    Plaintiffs, as set forth below, are being denied their correct spousal status by the Internal Revenue Service ("IRS") on the basis of DOMA, 1 U.S.C. § 7, and thus have been required to pay more in federal

income taxes than other similarly situated opposite-sex married persons. Plaintiffs seek to file their federal income tax returns as a married couple using the filing status of "Married Filing Jointly" rather than "Single" or "Head of Household." Plaintiffs filed amended federal income tax returns with the IRS for the tax years 2007 and 2009, seeking to be recognized as married taxpayers and requesting refunds.

4. This is an action for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. Rule 57. It seeks a determination that DOMA, 1 U.S.C. § 7, as applied to the plaintiffs, violates the United States Constitution by refusing to recognize lawful marriages for purposes of the Internal Revenue Code. The result of these violations of the Constitution is that the plaintiffs has been denied, and will continue to be denied, legal protections and benefits under federal law that would be available to them if their spouses were of the opposite sex.

## Jurisdiction

5. This action arises under the Constitution of the United States and the laws of the United States. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346(a)(1).

### Venue

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) and 1402(a)(1) because plaintiffs reside in this district, the events giving rise to their claims arose in this district and the defendant is the United States of America.

### Parties

7. Plaintiff VICKIE L. HENRY is a United States citizen and resides in Jamaica Plain, Massachusetts.

8. Plaintiff CLAIRE E. HUMPHREY is a United States citizen and resides in Jamaica Plain, Massachusetts.

9. Defendant THE UNITED STATES OF AMERICA is the proper defendant in a complaint seeking refund of federal income taxes pursuant to 26 U.S.C. § 7422(f)(1).

### Facts

10. Vickie and Claire, as United States citizens, are entitled to equal consideration and treatment from the federal government.

11. Each of the plaintiffs is married to a person of the same sex. Plaintiffs married to establish and convey the love, commitment, permanency and interconnectedness of a marital relationship, and to nurture and support their family. Their marriage is duly recognized under the law of the Commonwealth of Massachusetts.

12.     DOMA, 1 U.S.C. § 7, burdens the plaintiffs' familial relationships, including their ability to form, support and maintain their marriage and family.

13.     Although plaintiffs are similarly situated to all other married persons in the Commonwealth of Massachusetts, DOMA, 1 U.S.C. § 7, intrudes into their marriage, severs their marriage into "federal" and "state" components, and erases their marriage for all federal purposes. DOMA, 1 U.S.C. § 7, thereby burdens and stigmatizes their marital relationship, causing confusion and complexity in a culture where people are expected to have one familial and marital status, whether dealing with private, state or federal entities.

14.     DOMA, 1 U.S.C. § 7, requires plaintiffs to deny the existence of their family and the nature of their familial relationship.  For example, DOMA, 1 U.S.C. § 7, forces plaintiffs to misstate their actual marital status and describe themselves as "unmarried" or "single" or "head of household" to United States government officials and on United States government forms on pain of civil or criminal sanctions.  Federal income tax law requires income tax returns to be signed under the pains and penalties of perjury, 26 U.S.C. § 7206, but DOMA, 1 U.S.C. § 7, forces the plaintiffs to make blatant misrepresentations about their families and their marital status.

15.     The requirement, imposed by DOMA, 1 U.S.C. § 7, that plaintiffs inaccurately identify their marital status as "single" or

"unmarried" in federal contexts, even though they are legally married, burdens and stigmatizes their family relationships.

16. As a sovereign state of the United States of America, the Commonwealth of Massachusetts has, since its ratification of the United States Constitution and, indeed, before then, exclusively established and ordained the legal requirements for civil marriage within their sovereign jurisdiction and the circumstances for recognizing a marriage performed outside of Massachusetts.

17. Effective May 17, 2004, same-sex couples who otherwise complied with the requirements for obtaining a marriage license in the Commonwealth of Massachusetts were and are entitled to marry under the law of the State. The Commonwealth also recognized and recognizes marriages of same sex couples lawfully performed outside of Massachusetts, such as in Canada.

18. Since 2004, the Commonwealth of Massachusetts, pursuant to the Constitution of Massachusetts, has created, established, and recognized a single marital status that is available to every qualifying couple, whether same-sex or different-sex, i.e., regardless of the sex of the two parties to the marriage.

19. Plaintiffs are similarly situated to persons married to individuals of a different sex and, under Massachusetts law, are accorded the same status, responsibilities, and protections as other married

persons.  Federal law, however, treats same-sex and opposite-sex couples who are married differently.

20.     Throughout history and at least until 1996, the United States has consistently deferred to the sovereignty of the States when the marital status of an individual has been used as a marker of eligibility or access to some benefit, right, or responsibility identified by the federal government.

### The "Defense of Marriage Act"

21.     Congress enacted the so-called "Defense of Marriage Act" ("DOMA, 1 U.S.C. § 7"), P.L. 104-199, in 1996, and it was approved on September 21, 1996.

22.     This law responded to "a very particular development in the State of Hawaii."  H.R. Rep. No. 104-664, reprinted in 1996 U.S.C.C.A.N. 2905, at 2906.  As the controlling House Judiciary Committee Report explained "the state courts in Hawaii appear on the verge of requiring that State to issue marriage licenses to same-sex couples," and that development "threatens to have very real consequences … on federal law…."  Id.  More specifically,

> [I]f Hawaii does ultimately permit homosexuals to "marry," that development could have profound practical implications for federal law.  For to the extent that federal law has simply accepted state law determinations of who is married, a redefinition of marriage in Hawaii to include homosexual couples could make such couples eligible for a whole range of federal rights and benefits.

**Id., at 2914.**

**23.     Section 3 of DOMA, 1 U.S.C. § 7, provides in its entirety as follows:**

**Sec. 3  DEFINITION OF MARRIAGE.**

**(a) IN GENERAL – Chapter 1 of title 1, United States Code is amended by adding at the end the following:**

**§7.  Definition of 'marriage' and 'spouse'**

**"In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife."**

**(b) CLERICAL AMENDMENT. – The table of sections at the beginning of chapter 1 of title 1, United States Code, is amended by inserting after the item relating to section 6 the following new item:**

**"7.  Definition of 'marriage' and 'spouse'."**

**24.     In passing DOMA, 1 U.S.C. § 7, Congress took the unprecedented step of preemptively nullifying a class of marriages that it expected states would begin to license at some point in the future, that is, marriages of same-sex couples.  It withdrew from these marriages, but not from others, all federal financial and other responsibilities and protections.**

**25.     With regard to a gay or lesbian individual married to someone of the same sex, DOMA, 1 U.S.C. § 7, has overridden the longstanding deference of federal to state law in determining the marital status of an individual seeking the benefit or responsibility of any federal law triggered**

by a person's state-established marital status, and categorically denies both rights and responsibilities.

26.     In a 1997 Report, the General Accounting Office ("GAO") estimated that at least 1,049 federal laws were affected by DOMA, 1 U.S.C. § 7, because those laws depended on or in some way related to marital status.  U.S. Gen. Accounting Office, GAO/OGC-97-16 Defense of Marriage Act (1997), available at http://www.gao.gov/archive/1997/og97016.pdf.  A follow-up study in 2004 found that 1,138 federal laws tied benefits, protections, or responsibilities to marital status.  U.S. Gov. Accountability Office, GAO-04-353R Defense of Marriage Act (2004), available at http://www.gao.gov/new.items/d04353r.pdf.

27.     If not for the application of DOMA, 1 U.S.C. § 7, to all federal programs, the plaintiffs, as married persons, would receive the same status, responsibilities and protections under federal law as other married persons.  Yet when same-sex couples began to marry in Massachusetts and other states, DOMA, 1 U.S.C. § 7, operated to single out one class of marriages legally recognized by the State of Massachusetts, those of same-sex couples, and to deny their existence for all conceivable ends and purposes of federal law.

28.     Plaintiffs have been denied legal protections normally available to spouses under federal law.  Despite plaintiffs' willingness to assume the legally imposed responsibilities of marriage at the federal level,

**just as they do at the state level, they are prevented from doing so by DOMA, 1 U.S.C. § 7.**

**29.    DOMA, 1 U.S.C. § 7, grants preferred legal status and unique privileges to individuals married to someone of a different sex.**

**30.    The official House Report on DOMA, 1 U.S.C. § 7, H.R. Rep. No. 104-664, advances four rationales for why the federal government drew a line between its treatment of an individual married to a person of the same sex versus an individual married to a person of the opposite sex.  Those reasons are:**

- **(1) H.R. 3396 [the bill number] ADVANCES THE GOVERNMENT'S INTEREST IN DEFENDING AND NURTURING THE INSTITUTION OF TRADITIONAL HETEROSEXUAL MARRIAGE.**

- **(2) H.R. 3396 ADVANCES THE GOVERNMENT'S INTEREST IN DEFENDING TRADITIONAL NOTIONS OF MORALITY.**

- **(3) H.R. 3396 ADVANCES THE GOVERNMENT'S INTEREST IN PROTECTING STATE SOVEREIGNTY AND DEMOCRATIC SELF GOVERNANCE.**

- **(4) H.R. 3396 ADVANCES THE GOVERNMENT'S INTEREST IN PRESERVING SCARCE GOVERNMENT RESOURCES.**

**31.    None of these interests is adequate to justify discrimination against married persons in same-sex relationships.  The first two rationales have nothing to do with any federal interest and simply reflect a belief that same-sex couples should not be permitted to marry.**

**32.    The first claimed federal "interest" in "defending" "traditional heterosexual marriage" simply restates the government's intent to discriminate against same-sex couples and provides no independent**

justification for the government's discriminatory action, particularly as to same-sex couples who are already married.  The federal government has long accepted state determinations of marital status, even in the face of changes in marriage licensing by the states.  The only state-licensed marriages it categorically refuses to respect are those of same-sex couples.  In short, this "interest" repeats the distinction drawn by DOMA, 1 U.S.C. § 7, that is, between married couples of the same sex and married couples of different sexes, but it does not explain it.

33. The federal government's refusal to recognize the plaintiffs' marriage does not nurture, improve, stabilize or enhance the marriages of other married couples.  Nor would the federal government's recognition of plaintiffs' marriage degrade, destabilize or have any other deleterious effect on the marriages of other married couples.

34. The second claimed federal interest in "morality" was simply a vehicle for Congress to express its "moral disapproval of homosexuality." H.R. Rep. No. 104-664, pp. 15-16.  This illegitimate "interest" is nothing more than discrimination for its own sake, based on bare disapproval for a particular group of citizens.  Gay men, lesbians and bisexuals have suffered a long history of public and private discrimination.  Discrimination for its own sake is not a legitimate purpose upon which disadvantageous classifications may be imposed.  Moreover, sexual orientation bears no relation whatsoever to an individual's ability to participate in or contribute to society.  The Supreme Court in fact in *Lawrence v. Texas* ruled that

moral disapproval alone cannot justify legislation discriminating on the basis of sexual orientation.

35.     The third claimed interest in "protecting state sovereignty" is antithetical to DOMA, 1 U.S.C. § 7, not advanced by it.  Congress contravened inherent constitutional principles of federalism and failed to honor our nation's system of dual sovereignty in enacting DOMA, 1 U.S.C. § 7, because it is the states, and not the federal government, that regulate marriage and determine family status.  Congress did not "protect" state sovereignty in enacting DOMA, 1 U.S.C. § 7, since it dishonored the sovereignty of the states that license or recognize marriages of same-sex couples.

36.     As to the fourth claimed interest of preserving government resources, the available data from the Congressional Budget Office establishes that recognizing the marriages of individuals married to a person of the same sex would result in an annual net increase in federal revenue through 2014.  Congressional Budget Office, U.S. Congress, <u>The Potential Budgetary Impact of Recognizing Same-Sex Marriages</u>, June 21, 2004.  There was and is no factual basis for the claim that DOMA, 1 U.S.C. § 7, "preserve[s] scarce government resources."

37.     While the public fisc is always a matter of concern, where the distinction is drawn against a historically disadvantaged group and has no other basis, Supreme Court precedent marks this as a reason undermining rather than bolstering the distinction.  Congress has yet to identify a

**reason why gay and lesbian individuals who have met their obligations as taxpaying citizens and who are married to someone of the same sex must be denied protections available to persons who are married to someone of a different sex. Singling out same-sex couples who are married among all married persons is simply an expression of the intent to discriminate against gay people.**

38.  **DOMA, 1 U.S.C. § 7, is not adequately supported by any permissible federal interest.**

### Facts Particular To Plaintiffs

39.  **Plaintiff Vickie Henry ("Vickie"), now age 46, is a lawyer.**

40.  **Plaintiff Claire Humphrey ("Claire"), now age 54, owns her own business, an early education center.**

41.  **Vickie and Claire met in 1994, just weeks before Vickie was scheduled to move to California to start as an associate at a law firm. They dated long distance until 1996, when Vickie returned to Boston to be with Claire. They became engaged in 1997.**

42.  **In the presence of family and friends, Vickie and Claire were married in a religious wedding ceremony on July 4, 1998, in Wellesley, Massachusetts.**

43.  **Vickie and Claire purchased a home together in December 1998.**

**44.** After careful consideration and with much joy, Vickie and Claire brought children into their lives. First, they welcomed their daughter, L.K., in 2001.

**45.** In June 2003, marriage became legal for same sex couples in some parts of Canada. At that time, Vickie and Claire were expecting their second child. Marriage for same sex couples was not yet permitted in the United States and Vickie and Claire wanted to be as married as they could be before their second child's birth. Vickie and Claire married in Canada on July 26, 2003. They gave birth to their son, G.L., later that year.

**46.** The Massachusetts Supreme Judicial Court decided *Goodridge v. Department of Public Health* in November 2003. Same sex couples began marrying on May 17, 2004. Vickie and Claire registered their marriage at Boston City Hall on August 19, 2004, pursuant to M.G.L. c. 207, section 36.

**47.** Despite their status as legally married, Vickie and Claire did not file their annual federal income tax return as Married Filing Jointly in 2007 because of the federal government's non-recognition of their marriage pursuant to DOMA, 1 U.S.C. § 7. Instead, DOMA required that they file two separate 2007 federal returns as if they were unmarried. Following DOMA, Vickie's original 2007 federal return filing status was Head of Household and Claire's was Single.

**48.** On February 19, 2011, Plaintiffs filed an amended federal income tax return for the 2007 tax year, changing their filing status to Married Filing Jointly. The amended return claimed a refund of $8,135.

**49.** Plaintiffs amended 2007 federal income tax return attached a written statement titled "Explanation of Changes," a Form 8275 Disclosure Statement and a Form 8275-R, Regulation Disclosure Statement, in order to explain the grounds for their refund claim and the differences from their separate federal income tax returns, and to avoid any penalties. The Explanation of Changes states:

> **REFUND CLAIM BASED ON THE UNCONSTITUTIONALITY OF THE "DEFENSE OF MARRIAGE ACT"**
>
> The taxpayer, Vickie Henry (###-##-####), a spouse in a same-sex couple, was married under the laws of the Massachusetts (sic) as of December 31, 2007. … [I]n accordance with the federal law known as the Defense of Marriage Act ("DOMA"), the taxpayer filed an individual, federal income tax return as though she were unmarried. The taxpayer believes that being required to file as though she were unmarried amounts to unequal treatment compared to other married persons in Massachusetts. The taxpayer believes that her marriage, which is valid under Massachusetts law, should be respected for federal tax purposes, just like the Massachusetts marriages of heterosexual couples. Although this position is contrary to DOMA, the taxpayer believes that DOMA is unconstitutional and that she should be allowed to file this amended joint return with her spouse and receive the refund shown herein. The taxpayer's filing position is supported by the following decisions from the U.S. District Court – District of Massachusetts: Gill v. Office of Personnel Management, 699 F. Supp. 2d 374 (D. Mass. 2010) and Commonwealth of Massachusetts v. U.S. Dept. of Health and Human Services, 698 F. Supp. 2d 234 (D. Mass. 2010). The decisions in these cases, which found section 3 of DOMA to be unconstitutional, have been

> stayed pending the government's appeals to the U.S. Court of Appeals in the First Circuit.
>
> In particular, if the taxpayers were able to file as married filing jointly, the taxpayers are due a refund of $8,135.

50. The cover letter Vickie and Claire sent with their amended 2007 tax return noted the pendency of *Gill v. Office of Personnel Management* and asked the Internal Revenue Service to "place this amended income tax return on hold and take no action on it until court resolution of the issue." The Service instead acted quickly, starting the clock to file this action.

51. Plaintiffs received a notice from the IRS stating, "WE COULDN'T ALLOW YOUR CLAIM" dated May 12, 2011. The letter states, in relevant part that "[DOMA] provides that the word 'marriage' means a legal union between one man and one woman. The word 'spouse' refers only to a person of the opposite sex who is a husband or wife. Because same sex couples cannot, under the Defense of Marriage Act, constitute a marriage, you cannot file Married Filing Joint."

52. Vickie and Claire had a similar experience for the 2009 tax year. Despite their status as legally married, Vickie and Claire did not file their annual federal income tax return as Married Filing Jointly in 2009 because of the federal government's non-recognition of their marriage pursuant to DOMA, 1 U.S.C. § 7. Instead, DOMA required that they file two separate 2009 federal returns as if they were unmarried.

53. As a result, for the 2009 tax year, Vickie and Claire were deprived of a tax refund of $7,172 that they would have received had they

been permitted to file as a married couple with a Married Filing Jointly filing status.

54. Plaintiffs filed an amended federal income tax return for the 2009 tax year, changing their filing status to Married Filing Jointly. The amended return claimed a refund of $7,172.

55. Plaintiffs amended 2009 federal income tax return attached a written statement titled "Explanation of Changes," a Form 8275 Disclosure Statement and a Form 8275-R, Regulation Disclosure Statement, explaining that the basis for their refund claim was the unconstitutionality of DOMA as well as the differences from their separate federal income tax returns, and to avoid any penalties.

56. Plaintiffs received a letter from the IRS dated March 6, 2013 stating, in relevant part that "Same-sex partners may not file using a married filing separately or jointly filing status because federal law does not treat same-sex partners as married for federal tax purposes." This denial was because of DOMA.

57. The money that Vickie and Claire were denied because of DOMA, 1 U.S.C. § 7, could have gone toward household expenses and extracurricular activities associated with raising two growing children.

58. Moreover, the specific and concrete financial harm to Vickie and Claire's household continues to grow with each additional year that DOMA, 1 U.S.C. § 7, bars the IRS from recognizing them as a married

couple entitled to file their federal income tax returns as Married Filing Jointly.

### COUNT I

59.     Plaintiffs Vickie Henry and Claire Humphrey repeat and reallege the allegations set forth in Paragraphs 1 - 58 as if fully set forth herein.

60.     This is an action for the recovery of federal income tax erroneously or illegally assessed and collected.  This Court has jurisdiction by reason of 28 U.S.C. § 1346(a)(1).  This action also arises under 26 U.S.C. § 7422.  The defendant is the United States of America.

61.     Vickie and Claire seek a refund of federal income tax for the taxable year ending December 31, 2007.

62.     The IRS stated in a 1958 Revenue Ruling that for federal tax law purposes an individual is married if she or he is married under local law.  Rev. Rul. 58-66, 1958-1 C.B. 60.

63.     An individual who is married to a person of the opposite sex is not forced to file his or her federal income tax returns other than as married.  Indeed, he or she is required to file in accordance with his or her legal marital status.  By contrast, DOMA, 1 U.S.C. § 7, forces legally married same-sex couples to disregard their marital status, which results in a different federal income tax.  As a result of this disparate treatment, Vickie and Claire paid $8,135 more in federal income tax in 2007 than a similarly situated opposite-sex married couple would have paid.

64. **Because DOMA, 1 U.S.C. § 7, as applied by the IRS, requires this disparate treatment with regard to the 2007 federal income tax filing of Vickie and Claire, it creates a classification that treats similarly situated individuals differently without justification, in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.**

65. **An actual controversy exists between and among the parties.**

## COUNT II

66. **Plaintiffs Vickie Henry and Claire Humphrey repeat and reallege the allegations set forth in Paragraphs 1 - 65 as if fully set forth herein.**

67. **This is an action for the recovery of federal income tax erroneously or illegally assessed and collected.  This Court has jurisdiction by reason of 28 U.S.C. § 1346(a)(1).  This action also arises under 26 U.S.C. § 7422.  The defendant is the United States of America.**

68. **Vickie and Claire seek a refund of federal income tax for the taxable year ending December 31, 2009.**

69. **The IRS stated in a 1958 Revenue Ruling that for federal tax law purposes an individual is married if she or he is married under local law.  Rev. Rul. 58-66, 1958-1 C.B. 60.**

70. **An individual who is married to a person of the opposite sex is not forced to file his or her federal income tax returns other than as married.  Indeed, he or she is required to file in accordance with his or her**

legal marital status. By contrast, DOMA, 1 U.S.C. § 7, forces legally married same-sex couples to disregard their marital status, which results in a different federal income tax. As a result of this disparate treatment, Vickie and Claire paid $7,172 more in federal income tax in 2009 than a similarly situated opposite-sex married couple would have paid.

71.   Because DOMA, 1 U.S.C. § 7, as applied by the IRS, requires this disparate treatment with regard to the 2009 federal income tax filing of Vickie and Claire, it creates a classification that treats similarly situated individuals differently without justification, in excess of Congressional authority in violation of the right of equal protection secured by the Fifth Amendment of the Constitution of the United States.

72.   An actual controversy exists between and among the parties.

## PRAYERS FOR RELIEF

WHEREFORE, the plaintiffs pray that this Court:

1.   Declare DOMA, 1 U.S.C. § 7, unconstitutional as applied to the plaintiffs.

2.   Enjoin the defendant from continuing to discriminate against the plaintiffs by treating them differently from similarly situated individuals who are married to persons of the opposite sex.

3.   Permanently enjoin the defendants Secretary of the Treasury and the Commissioner of Internal Revenue from administering and interpreting §§ 401(a) and 401(h) of the Internal Revenue Code in contradiction to the Court's declaration in Prayer 2.

**4.     Award plaintiffs Vickie Henry and Claire Humphrey judgment in the amount of $15,307 ($8,135 for the tax year 2007 and $7,172 for the tax year 2009), plus interest and costs as allowed by law, and such other relief as this Court may deem just, including the award of reasonable litigation costs incurred in this proceeding under 26 U.S.C. § 7430.**

**5.     Award attorney's fees (if applicable) and costs to plaintiffs pursuant to 28 U.S.C. § 2412 or any other applicable statutory provision.**

**6.     Grant such other relief as is just and appropriate.**

        Respectfully submitted,

        **VICKIE L. HENRY & CLAIRE E. HUMPHREY,**

        **By attorney Vickie L. Henry**

        **/s/ Vickie L. Henry**
        **Vickie L. Henry, BBO #632367**
        **vickiehenry88@gmail.com**
        **83 May Street**
        **Jamaica Plain, MA  02130**
        **(617) 966-6856**

**DATED:  May 9, 2013**